# United States Court of Appeals for the Federal Circuit

2008-3261

ANTHONY W. LISANTI,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.


Linda D. Friedman, Stowell & Friedman, Ltd., of Chicago, Illinois, argued for petitioner. Of counsel was Jennifer Schoen Gilbert.

Tara J. Kilfoyle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3261

ANTHONY W. LISANTI,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in CH0831070499-I-1.

_____

DECIDED: July 29, 2009

_____

Before MICHEL, Chief Judge, and NEWMAN and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Anthony W. Lisanti appeals from the decision of the Merit Systems Protection Board ("Board") affirming the Office of Personnel Management's ("OPM's") calculation of his retirement annuity. See Lisanti v. Office of Pers. Mgmt., No. CH-0831-07-0499-I-1, 2007 MSPB Lexis 7731 (M.S.P.B. Nov. 19, 2007) ("Initial Decision"); Lisanti v. Office of Pers. Mgmt., No. CH-0831-07-0499-I-1, 108 M.S.P.R. 604 (Apr. 4, 2008) ("Final Order"). As set forth below, while we disagree with the Board's ruling that it lacked authority to decide the case, because the Board did affirm OPM's correct determination of Lisanti's base pay and therefore his annuity, we affirm the Board's decision.

BACKGROUND

Lisanti worked as a court reporter in the federal court system from October 1970 until February 2006, when he retired from federal service. His retirement benefits were provided by the federal government under the Civil Service Retirement System ("CSRS"). In this appeal, Lisanti argues that those benefits were incorrectly calculated because they were based on only part of his income.

As a court reporter, Lisanti had two primary duties to which his pay was separately allotted: recording judicial proceedings and producing transcripts upon request to the courts and the parties. Producing transcripts required transcribing the recorded proceedings. Lisanti spent approximately two hours transcribing proceedings to produce the transcripts for every hour he spent recording them.

In 1984, the federal government changed the pay structure for court reporters. Before 1984, court reporters were primarily independent contractors who negotiated their own rates for producing transcripts and engaged in freelance reporting work apart from their official work for the courts. Their salaries were set artificially low due to their ability to engage in outside work. After 1984, court reporters were treated as full-time government employees with benefits and were paid for recording proceedings and producing transcripts for the court with a larger annual salary fixed by the Judicial Conference. See 28 U.S.C. § 753(e); see also Cutright v. United States, 953 F.2d 619 (Fed. Cir. 1992) (holding court reporters to be full-time government employees after 1984). They were, however, paid for producing transcripts for the parties by "charg[ing] and collect[ing] fees [from the parties] for transcripts . . . , at rates prescribed by the court subject to the approval of the Judicial Conference." 28 U.S.C. § 753(f). Thus,

while receiving a larger fixed salary from the court system, the court reporters derived some of their income from direct payments from the parties.

During Lisanti's employment, his employing agency, the Administrative Office of the United States Courts, reported his income to the Internal Revenue Service ("IRS"). The Administrative Office reported Lisanti's annual salary on a W-2 form. It reported Lisanti's transcript income on a 1099 form as self-employment income. Lisanti challenged the tax treatment of his transcript income at the IRS, which granted him a refund for the employer's share of the payroll taxes he had paid. In other words, the IRS apparently treated Lisanti's transcript income as income from work performed as an employee of the United States, not as self-employment income.

Under the CSRS, both Lisanti and the Administrative Office made periodic contributions to the Civil Service Retirement and Disability Fund ("CSRS fund"), calculated using Lisanti's "basic pay," or "base pay." See 5 U.S.C. § 8334(a)(1)(A), (B) (instructing the employing agency to contribute a certain percentage of its employees' "basic pay" and to deduct the same amount from the employees' pay to contribute both to the "Fund," defined in 5 U.S.C. § 8331(5) as the CSRS fund). "Basic pay" is defined in 5 U.S.C. § 8331(3) to include several types of pay, specified in subsections (A) through (H), such as "additional pay" and "premium pay" provided by certain specified provisions of law. Id. After subsection (H), the statute provides that "basic pay" "does not include bonuses, allowances, overtime pay, military pay, [or] pay given in addition to the base pay of the position as fixed by law or regulation except as provided by subparagraphs (B) through (H) of this paragraph." Id.

Under OPM's regulations, the "[r]ate of basic pay means the rate of pay fixed by law or administrative action for the position held by an employee, including any . . . special rate supplement under 5 CFR part 530, subpart C [Special Rate Schedules for Recruitment and Retention]; or similar payment or supplement under other legal authority, . . . exclusive of additional pay of any other kind." 5 C.F.R. § 550.103. The Administrative Office used Lisanti's annual salary, which did not include his income from preparing transcripts, as his basic pay for purposes of his CSRS fund contributions.

When an employee retires, OPM calculates retirement annuities, also based on the employee's basic pay. See 5 U.S.C. § 8339(a) (providing that the annuity of an employee is a multiple of his "average pay"); 5 U.S.C. § 8331(4) (defining "average pay" as an average of an employee's "basic pay" over certain years).

In 1996, in anticipation of his retirement several years later, Lisanti, along with nine other court reporters, sued the Administrative Office in the United States District Court for the Northern District of Illinois, claiming that the income he had earned from the preparation of transcripts had been unlawfully excluded from the calculation of his pension benefits. Lisanti v. United States, No. 96-C-00395, 1998 U.S. Dist. Lexis 2934 (N.D. Ill. Mar. 9, 1998) ("Lisanti District Court Dismissal"). The district court dismissed Lisanti's claim for lack of subject matter jurisdiction, holding that the CSRS provided for an exclusive review process for claims relating to retirement benefits; that review process consisted of adjudication by OPM, an appeal to the Board, and a petition for review in this court. Id. at *9–16. At the same time, Lisanti and the other court reporters raised their claim with OPM and appealed to the Board, which issued a decision

determining that it lacked jurisdiction because none of the court reporters had retired and applied for retirement benefits. Id. at *10–11.

When Lisanti retired in 2006, he began receiving pension benefits from the CSRS in the form of a retirement annuity. In calculating his annuity, OPM again used Lisanti's annual salary as his basic pay and again did not include in his basic pay the income he had received for the preparation of court transcripts. Lisanti again challenged OPM's calculation. In an initial decision, OPM determined that it had correctly calculated Lisanti's annuity, as it had used his salary, which was certified by his payroll agency, the Administrative Office, as his basic pay. OPM also determined that it had no authority to include Lisanti's transcript income in his basic pay because the transcript income did not fall under the allowable "base pay" as defined by 5 U.S.C. § 8331(3). In a reconsideration decision, OPM upheld its initial decision, stating that Lisanti's "transcript income cannot be included in [his] average salary computation because there is no provision in the law for including it." OPM Priv. Ltr. Rul. CSA 4 305 492 (May 15, 2007), Joint App. 16.

Lisanti appealed OPM's decision to the Board and moved to certify the appeal as a class action on behalf of himself and all other court reporters similarly situated to him. First, the administrative judge ("AJ") denied Lisanti's motion to certify the appeal as a class action, reasoning that Lisanti had not proven that the Board had jurisdiction over other members of the class because he had not shown that they had exhausted their administrative remedies at OPM and declining to waive the exhaustion requirement for the other members of the class.

The AJ then stated that the Board lacked authority to decide the case, but nevertheless affirmed OPM's decision. The AJ reasoned that OPM's rules require that the employing agency (in this case, the Administrative Office), not OPM, determine an employee's basic pay. Here, the Administrative Office had certified Lisanti's basic pay in his individual retirement record, and it did not include his transcript income. The AJ acknowledged that the IRS's treatment of Lisanti's transcript income conflicted with the Administrative Office's exclusion of it from "basic pay," finding Lisanti's arguments "compelling." Initial Decision, 2007 MSPB Lexis 7731, at *8. However, according to the AJ, OPM was compelled to rely on the Administrative Office's certified individual retirement record. Thus, the AJ found that Lisanti was required to seek redress from the Administrative Office, not from the Board. However, despite the conclusion that it lacked authority to review OPM's reliance on the Administrative Office's determination, the AJ affirmed OPM's decision.

Lisanti then petitioned for review of the AJ's decision. In a final order issued on April 4, 2008, the Board denied the petition, concluding that there was no new, previously unavailable evidence and that the AJ made no error in law or regulation that affected the outcome. The AJ's initial decision therefore became the final decision of the Board.

Lisanti timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a Board decision is limited. We can set aside the Board's decision only if it was "(1) arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2006); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003).

A.      The Board Had the Authority to Address Lisanti's Basic Pay

Lisanti argues that the Board committed several errors of law in affirming OPM's determination of his basic pay. According to Lisanti, the Board erred in holding that OPM had no authority to determine Lisanti's basic pay, and thus that the Board had no authority to review OPM's reliance on the Administrative Office's determination. Lisanti argues that the Board had the authority to order OPM to include transcript income in his basic pay, as the Board was required to review OPM's interpretation of a statute. Further, according to Lisanti, OPM was required to adjudicate all claims for CSRS annuity benefits; sending court reporters to the Administrative Office to have it determine their basic pay made the Administrative Office the adjudicator, in violation of the congressional mandate.

Additionally, according to Lisanti, the Board's decision leaves him no forum for review, as he has already sued the Administrative Office in district court, and the suit was dismissed for lack of jurisdiction, the district court stating that Lisanti was required to bring a claim at OPM. Lisanti further argues that the Administrative Office has no procedure for resolving his claim. Thus, Lisanti argues, the Board had the authority and the obligation to determine his basic pay, rather than forcing OPM to rely on the Administrative Office's determination.

The government responds that the Board properly held that it lacked the authority to review OPM's reliance on the Administrative Office decision. According to the government, for OPM to adjudicate claims under the CSRS, the employing agency must supply a certified individual retirement record, and that is the basic record for action on all claims for annuity; the Board must rely on the agency's records unless they are lost, destroyed, or incomplete. The government adds that numerous Board decisions hold that the Board lacks jurisdiction to order OPM to obtain a corrected certificate or to review an employing agency's certificate, and the Federal Circuit has deferred to those decisions.

The government further responds that Lisanti has not been deprived of review of his claim. The government argues that OPM may, within its jurisdiction, interpret the meaning of the term "basic pay" to identify whether transcript fees fall within the definition, which OPM did in this case. Although, according to the government, OPM was not required to and could not recalculate Lisanti's annuity, Lisanti was not deprived of review. The government adds that, even if Lisanti had been deprived of review of his claim, the Board has limited jurisdiction and cannot be forced to provide relief when it is not within the Board's jurisdiction.

We agree with Lisanti that OPM had the authority to determine Lisanti's basic pay and that the Board also had the authority to review OPM's reliance on the Administrative Office's determination. Although the employing agency, the Administrative Office in this case, must certify an employee's basic pay in his individual retirement record, OPM is required under the CSRS to review the employing agency's legal determination of which categories of income qualify as basic pay. Congress

designed the CSRS "to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." United States v. Fausto, 484 U.S. 439, 444 (1988) (quoting S. Rep. No. 95-969, at 3 (1978)). Congress therefore mandated that CSRS claims be brought through one central channel instead of through various complicated avenues. Id. at 445 (The Civil Service Retirement Act "replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." (citing S. Rep. No. 95-969, at 4)). Thus, under 5 U.S.C. § 8347(b), OPM "shall adjudicate all claims under" the CSRS. Such claims require the interpretation of the term "basic pay," which falls under the CSRS. See 5 U.S.C. § 8331(3) (defining "basic pay" under the CSRS). OPM was therefore required to review the Administrative Office's interpretation of the term "basic pay," which excluded transcript income from Lisanti's basic pay. The Board was similarly required to review OPM's interpretation of "basic pay," as Congress directed that OPM's actions that affect "the rights or interests of an individual" may be appealed to the Board. 5 U.S.C. § 8347(d)(1).

The Board's determination that Lisanti must only seek redress from the Administrative Office, if affirmed, would have effectively left Lisanti without any judicial remedy. As Lisanti points out, he attempted to force the Administrative Office to reevaluate his "basic pay" by suing the Administrative Office in federal district court. However, his case was dismissed, pursuant to the Administrative Office's motion, for lack of subject matter jurisdiction because the OPM–Board–Federal Circuit review

process was the exclusive avenue for Lisanti to pursue his claims. Lisanti District Court Dismissal, 1998 U.S. Dist. Lexis 2934, at *9–16. Thus, Lisanti has tried to "seek redress from his employing agency," and he had no judicial remedy there. Initial Decision, 2007 MSPB Lexis 7731, at *8. A result that forces Lisanti to bounce back and forth between OPM and the Administrative Office, with neither agency deciding his claim, would be undesirable and should be avoided. See Wassenaar v. Office of Pers. Mgmt., 21 F.3d 1090, 1092 (Fed. Cir. 1994) ("A reading of [statutes] which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and legislative purpose." (quotation marks omitted)). Instead, the more reasonable and logical result is that OPM and eventually the Board have, as designated by Congress, the responsibility to interpret the law to adjudicate Lisanti's claims.

The government cites several Board decisions and two of our nonprecedential decisions, Rainone v. Office of Pers. Mgmt., 249 F. App'x 823 (Fed. Cir. Sept. 20, 2007), and Lee v. Office of Pers. Mgmt., 301 F. App'x 926 (Fed. Cir. Dec. 3, 2008), to argue that an employing agency's certified individual retirement record is binding on OPM and on the Board, so that OPM may not consider evidence outside of the certified individual retirement record. Gov't Br. 14–17. However, the government fails to cite any precedential decision of this court supporting the idea that OPM may avoid interpreting the CSRS, a statute that OPM itself is required to administer. See 5 U.S.C. § 8347(a) ("[OPM] shall administer this subchapter [the CSRS]."). Thus, even when an employee's certified individual retirement record states his "basic pay," if the employee challenges the employing agency's interpretation of the term "basic pay," OPM, and

subsequently the Board, are required to entertain that claim, absent some clear congressional intent to the contrary. Cf. Bacani v. Office of Pers. Mgmt., 64 M.S.P.R. 588, 592 (1994) (determining that the Board could not interpret employee's "special pay adjustment" because such an adjustment, under the employing agency's statute "may not be reviewed by any other agency." (citing 38 U.S.C. § 7422(d))). The Board therefore erred in stating that neither it nor OPM had the authority to question the Administrative Office's determination of Lisanti's basic pay.

We next address OPM's decision that transcript income did not fall under the allowable basic pay as defined by 5 U.S.C. § 8331(3). We may address the correct interpretation of 5 U.S.C. § 8331(3), as it is a matter of law that OPM, the agency responsible for determining basic pay, decided in the first instance, even though the Board's decision did not rely on OPM's interpretation of it. See generally Killip v. Office of Pers. Mgmt., 991 F.2d 1564, 1568–69 (Fed. Cir. 1993) ("We may, . . . where appropriate, affirm the Board on grounds other than those relied upon in rendering its decision, when upholding the Board's decision does not depend upon making a determination of fact not previously made by the Board.").

B.    Transcript Income Is Not Basic Pay

On the merits, Lisanti argues that his pay for preparing transcripts should be part of his basic pay and that OPM erred in holding that it was not. According to Lisanti, under 5 U.S.C. § 8331(3) and 5 C.F.R. § 550.103, "basic pay" includes the pay federal employees receive for performing their basic, required duties. Lisanti asserts that preparing transcripts takes up most of a court reporter's time and is one of two basic tasks of a court reporter, so it is part of his basic, required duties. Basic pay is defined

in the statute and regulations as pay "fixed by law or administrative action," and, according to Lisanti, reporters' fees for preparing transcripts are so fixed; reporters are given maximum rates they can charge for transcripts. Lisanti asserts that court reporters are unlawfully characterized as federal employees while recording proceedings but as independent contractors while preparing transcripts. According to Lisanti, the IRS recognized that the distinction was unlawful by refusing to treat Lisanti as an independent contractor for any of his income. Similarly, Lisanti points out that the Third Circuit has held in United States v. Pittsburgh, 757 F.2d 43, 47 (3d Cir. 1985), that court reporters are employees of the United States throughout performance of all of their duties. Thus, according to Lisanti, OPM and the Board should have found his income for preparing transcripts to be part of his basic pay.

The government responds that transcript income should not be included in the definition of "basic pay" because nothing in the statute provides for inclusion of transcript income in that definition. According to the government, the CSRS provides an extensive definition of "basic pay," which excludes overtime pay, bonuses, and "pay given in addition to the base pay of the position as fixed by law or regulation." Thus, the government asserts, "basic pay" is not necessarily the pay actually received. Although Lisanti may not charge more than a certain maximum for a transcript, the government argues that Lisanti may choose to charge less, so his fees are not "fixed by law." Further, the government does not control how many transcripts Lisanti sells to private parties, so, according to the government, Lisanti's overall transcript income is not "fixed by law." Finally, the government argues that Lisanti's treatment for tax purposes is irrelevant to the statute's requirements. Instead, according to the government, the

CSRS is funded by employee and agency contributions, which are calculated based only on the employee's "basic pay." Thus, the government argues, OPM does not have the funds to pay an employee an annuity based on more than what the agency considered his "basic pay."

We agree with the government that Congress's definition of the term "basic pay" does not include transcript income. In 5 U.S.C. § 8331(3), Congress defined "basic pay" both by inclusion and by exclusion. The term includes the various types of pay, all given by the government, set out in subsections (A) through (H), and it excludes "bonuses, . . . overtime pay, . . . [and] pay given in addition to the base pay of the position as fixed by law or regulation except as provided by subparagraphs (B) through (H) of this paragraph." Id.; see 5 C.F.R. § 550.103. Even though 28 U.S.C. § 753(f) sets out the scheme for the maximum amount that a court reporter can charge for transcripts, it is not pay "of the position fixed by law or regulation," as "base pay" is defined. See 5 U.S.C. § 8331(3); 5 C.F.R. § 550.103. As the government points out, no statute or regulation fixes the number of transcript orders a court reporter might receive, so his pay for transcript orders is not the kind of pay "fixed by law" that was intended in 5 U.S.C. § 8331(3). Instead, the court reporter takes as many or as few transcript orders as the parties request and receives compensation accordingly, from those parties. Thus, the Administrative Office does not determine or control how much money a court reporter will earn from transcript orders, and the Administrative Office does not pay that money.[*]

---

[*] When the United States is a party, it pays the court reporter's transcript fees. 28 U.S.C. § 753(f). The United States also pays for transcripts in criminal proceedings under the Criminal Justice Act (18 U.S.C. § 3006A) and in cases in which a

Instead, transcript fees are more like bonuses or overtime pay: the more transcripts a court reporter produces for private parties, the more money he makes. Court reporters' annual salaries compensate them for forty hours of work per week, regardless how those hours are spent, and court reporters then receive transcript income on top of their annual salaries. Even though an employee's hourly rate of overtime pay will also be fixed by law, "overtime pay" is clearly excepted from basic pay under 5 U.S.C. § 8331(3). Similarly, transcript fees are not included in basic pay, even though the maximum amount per transcript is fixed by law.

Furthermore, 5 C.F.R. § 550.103 does not affect the outcome of this case. That regulation similarly defines "basic pay" as "pay fixed by law or administrative action for the position held by an employee, including any . . . special rate supplement under 5 CFR part 530, subpart C; or similar payment or supplement under other legal authority, . . . and exclusive of additional pay of any other kind." 5 C.F.R. § 550.103. The "purpose" of the "special rate supplement" is to establish "special rates of pay . . . to address significant recruitment or retention problems." 5 C.F.R. § 530.301. Lisanti does not argue that he is such a "special rate employee." Id. His transcript income also does not qualify as a "similar payment or supplement under other legal authority." 5 C.F.R. § 550.103. The transcript income was not established as a separate source of income to recruit or retain court reporters; rather, it was set up under the peculiar circumstances of the court reporters' history, when they shifted from being primarily

party is proceeding in forma pauperis, from moneys appropriated for those purposes. 28 U.S.C. § 753(f). However, in those cases, the government is either acting as a party or standing in the shoes of a party for purposes of expenses, and the expenses are paid from an entirely different fund than the source of the court reporter's annual salary. Thus, the government's payment of those funds does not affect our analysis with respect to government control over Lisanti's pay.

independent contractors to being full-time federal employees.  Furthermore, transcript income cannot be "similar" to a "special rate supplement" because, as explained <u>supra</u>, transcript income is more similar to overtime pay, which is explicitly excluded from the definition of "basic pay."

Additionally, as the government points out, Lisanti did not have any CSRS deductions taken out of his transcript income to help pay for his retirement annuity. Although failure to make contributions is not determinative, as Lisanti and the Administrative Office could both perhaps retroactively add to the CSRS fund, Lisanti cannot argue that he has been treated inequitably within the statutory scheme, given that the same definition of "basic pay" was applied to both his contributions to the CSRS fund and his later retirement annuity.

Finally, although the treatment of Lisanti's transcript pay by the IRS may show that the transcript pay is part of his earned income, the income categories defined by the Internal Revenue Code are not relevant to the statutory definition of "basic pay." Instead, Congress defined "basic pay" separately for purposes of the CSRS, so Lisanti's attempts to show an inconsistency are unavailing.  Absent statutory authorization for the inclusion of a certain type of income in "basic pay," we cannot order its inclusion, even if the result may seem unfair to Lisanti.  <u>See</u> <u>Kindall v. Office of Pers. Mgmt.</u>, 347 F.3d 930, 934 (Fed. Cir. 2003) ("Article I, § 9, cl. 7 of the Constitution limits payments from the Treasury to those authorized by statute, and, without statutory provision for inclusion of intervening cost-of-living adjustments at reinstatement, this court cannot order such inclusion.  Although the result seems unfair to Mrs. Kindall, it is the role of Congress, not

the courts, to rectify the problem," if one exists. (citation omitted)). Thus, the IRS's treatment of Lisanti's income is not relevant to OPM's treatment of his income.

C.     Lisanti's Request for Class Treatment is Moot

Lisanti finally argues that the Board abused its discretion in holding that this case did not meet the requirements for class treatment. However, because we have affirmed the Board's decision that Lisanti's transcript income did not qualify as "basic pay," his request for class treatment is moot. See Ferreiro v. United States, 501 F.3d 1349, 1353 (Fed. Cir. 2007) ("Our decision [affirming dismissal of the case] moots appellant's appeal of the trial court's denial of class certification."); Christopher Vill., L.P. v. United States, 360 F.3d 1319, 1337–38 (Fed. Cir. 2004) ("[T]he appellants' class certification issue is moot in light of our holding[ ] that the government is not liable to the appellants . . . ." (quotation marks omitted)). We have considered Lisanti's remaining arguments and find them unpersuasive.

CONCLUSION

In sum, we disagree with the Board's determination that it did not have the authority to review OPM's reliance on the employing agency's individual retirement record. However, the Board properly affirmed OPM's decision interpreting Lisanti's "basic pay." We therefore affirm the Board's decision in favor of the government.

AFFIRMED