# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SHARON E. BROWN,
            Appellant,

v.

OFFICE OF PERSONNEL
      MANAGEMENT,
            Agency.

DOCKET NUMBER
PH-0845-19-0412-I-1

DATE:  December 4, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Sharon E. Brown, Towson, Maryland, pro se.

Michael Shipley, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which affirmed the final decision of the Office of Personnel Management (OPM) finding that she had been overpaid $21,834.88 in Federal Employees' Retirement System (FERS) disability retirement annuity benefits and denying her request for a

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

waiver of the overpayment, but modified the repayment schedule. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Northeastern Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was a FERS-covered employee for the Social Security Administration (SSA), with a service computation date of April 1, 2002. Initial Appeal File (IAF), Tab 8 at 228. She last reported to duty on May 15, 2015, and in October 2015, she applied for disability retirement benefits. IAF, Tab 1 at 122, Tab 8 at 220-22, 156, 175.

By letter dated February 23, 2017, OPM approved the appellant's application for disability retirement. IAF, Tab 8 at 76-79. OPM notified the appellant that, once she separated from service and SSA notified it of her last day in pay status, OPM would begin authorizing interim payments. *Id*. at 76. On February 27, 2017, SSA informed OPM that the appellant's last day in pay status was the same as her last day in duty status—May 15, 2015. *Id.* at 156-57. On March 2, 2017, the appellant separated from service, and on March 3, 2017, she began receiving interim disability annuity payments, including a retroactive lump-sum payment. IAF, Tab 1 at 116, Tab 8 at 26, 146, 233.

Subsequently, OPM learned that May 15, 2015, was not actually the appellant's last day of pay. IAF, Tab 8 at 152-53, 233. Rather, the appellant's Individual Retirement Record (IRR) showed that her last day in pay status was October 5, 2016, and SSA later confirmed that it had paid the appellant for 8 hours of annual leave on that date. IAF, Tab 8 at 147, 233, Tab 14 at 5-10. Because the appellant had turned 62 years old in September 2016, prior to her actual last day in pay status, OPM determined that she was not entitled to a disability retirement annuity, but rather a basic (or "earned") annuity, commencing October 6, 2016. IAF, Tab 8 at 24-25.

Eventually, OPM issued a final decision finding that it had overpaid the appellant $21,834.88 in annuity benefits, which it proposed to collect through 229 monthly installments of $95, and a final installment of $79.88. *Id*. at 21-25. Specifically, OPM determined that $21,834.88 was the difference between the basic annuity payments to which the appellant was entitled and the interim disability retirement annuity payments that she had actually received. *Id*. at 24, 26-27. This difference was owing both to the later start date for the basic annuity (October 2016 instead of March 2016) and the lower monthly amount of the basic annuity (approximately $680 per month instead of approximately $1,853 per month). *Id*.

This appeal followed. IAF, Tab 1. The appellant contested the change of her disability retirement annuity to a regular annuity and the resulting overpayment, and she argued that she could not afford to repay the overpayment. IAF, Tab 1 at 19-20, Tab 12 at 2-3, 9, Tab 17, Hearing Compact Disc (HCD) (testimony of the appellant). After a hearing, the administrative judge affirmed OPM's final decision as to the existence and the amount of the overpayment. IAF, Tab 20, Initial Decision (ID) at 1, 3-4. She also found that the appellant did not provide a sufficient basis to waive collection, but she nevertheless adjusted the repayment schedule to 1,455 monthly installments of $15 and a final installment of $9.88. ID at 5-7.

The appellant has filed a petition for review arguing that SSA made a mistake in placing her on annual leave on October 5, 2016, she is entitled to a disability retirement annuity, and collection of any overpayment should be waived based on financial hardship. Petition for Review (PFR) File, Tab 1 at 2, 4, 10. OPM has filed a response. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

Existence and Amount of the Overpayment.

OPM's final decision, and hence this Board appeal, concerns both the appellant's eligibility for disability retirement and, contingent on that eligibility, an overpayment of annuity benefits. In an appeal from an OPM decision on a voluntary disability retirement application, the appellant bears the burden of proof by preponderant evidence. *Thorne v. Office of Personnel Management*, 105 M.S.P.R. 171, ¶ 5 (2007); 5 C.F.R. § 1201.56(b)(2)(ii). However, OPM bears the burden of proving by preponderant evidence the existence and amount of an annuity overpayment. *Vojas v. Office of Personnel Management*, 115 M.S.P.R. 502, ¶ 10 (2011); 5 C.F.R. § 845.307(a). In the context of this case, these issues are intertwined. For the reasons explained in the initial decision, we agree with the administrative judge that the current record supports OPM's determination that the appellant was not entitled to disability retirement and, hence, was overpaid $21,834.88 in annuity benefits. ID at 2-4. However, as set forth below, we find it appropriate to remand the appeal for further evidence and argument on the issue of the appellant's eligibility.

Knowing that her last day in pay status was the key issue that needed to be resolved in order to obtain disability retirement, the appellant requested that the SSA correct her IRR. On January 29, 2019, an SSA Employee Assistance Program Counselor emailed OPM, stating that the appellant's last day in pay status was May 15, 2015. IAF, Tab 8 at 70. However, OPM was not willing to accept this email as an administratively sufficient basis to amend its records, insisting that any correction to the appellant's last day in pay be certified on a Standard Form (SF) 3100 or SF 3101-101. *Id*. at 129, 137. OPM followed up with SSA and requested a final answer on which date to use as the appellant's last day in pay status. *Id*. at 146, 150. After some inconclusive internal discussions, SSA reported to OPM that the appellant's time and attendance record for October 5, 2016, reflected 8 hours of annual leave, so SSA was confirming that as

her last date in pay. *Id*. at 147-50. Both OPM and the administrative judge used this date in their respective decisions. ID at 4; IAF, Tab 8 at 24-25.

It is undisputed that SSA paid the appellant for 8 hours of annual leave on October 5, 2016. ID at 4; IAF, Tab 8 at 233, Tab 14 at 2-10, Tab 18 at 5; PFR File, Tab 1 at 1-2, 4. It is also undisputed that this payment of annual leave, which netted the appellant a total of $9.47, rendered her ineligible for FERS disability retirement and caused her to incur a $21,834.88 overpayment. However, the appellant has, at every point in these proceedings, argued that the payment was an administrative error that should be reversed, but she has yet to receive an independent review of the issue. IAF, Tab 1 at 5, Tab 8 at 65; PFR File, Tab 1 at 1-2, 4. We find that she is entitled to one.

IRRs are important documents that form the basis for OPM benefits determinations. *See generally* 5 C.F.R. § 841.504; OPM, Civil Service Retirement System and FERS Handbook, *Individual Retirement Records and Registers of Separations and Transfers*, ch. 81, part 81A2 (April 1998), https://www.opm.gov/retirement-services/publications-forms/csrsfers-handbook/c020.pdf. An applicant for benefits has the right to contest the accuracy of the information contained in her IRR. She may do so in the context of an OPM benefits determination or a Board appeal of a final OPM decision affecting her rights or interests under the retirement statutes. *Lisanti v. Office of Personnel Management*, 573 F.3d 1334, 1340 (Fed. Cir. 2009); *Billinger v. Office of Personnel Management*, 206 F.3d 1404, 1407 (Fed. Cir. 2000); *Beal v. Office of Personnel Management*, 122 M.S.P.R. 210, ¶¶ 6-8 (2015); *Conner v. Office of Personnel Management*, 120 M.S.P.R. 670, ¶¶ 4-7 (2014).

We have carefully reviewed the record in this appeal, and we find that there is no evidence, such as a documented leave request, that would support SSA's decision to charge the appellant annual leave on October 5, 2016. In fact, the appellant specifically denies requesting leave on that date. PFR File, Tab 1 at 1. Nor is there a coherent explanation of how this happened. After a great deal of

internal correspondence, the most that the SSA human resources officials could tell OPM was that SSA could not correct the last date of pay because the appellant had "received 400 hours pay from [Family and Medical Leave Act (FMLA)] and another 158 hours from a leave share program." IAF, Tab 8 at 147-52, 175-76. However, it is not clear to us what the appellant availing herself of FMLA and shared leave has to do with the matter at hand. We are not talking about 558 hours of (possibly unpaid) leave on unspecified dates; we are talking about 8 hours of paid annual leave on a very specific date—October 5, 2016. Moreover, the very same Employee Assistance Program Counselor who gave this explanation also stated consistently that the appellant's last date of pay should have been May 15, 2015. *Id*. at 121, 175-76. He elsewhere gave a somewhat different explanation for SSA's inability to amend its records: "I understand that there may be a discrepancy about that date which I believe was caused by donated leave but, unfortunately, her pay card cannot be amended due to her being separated from this agency." *Id*. at 154. This explanation likewise does not give us any confidence that the October 5, 2016 payment was proper. In fact, it suggests that the only thing standing in the way of a correction was some sort of technical limitation in SSA's recordkeeping system.

We appreciate that the appellant's IRR is accurate in the sense that it reflects that she was, in fact, paid for 8 hours of annual leave on October 5, 2016. However, this begs the real question of whether the appellant should have been paid on that date in the first place. To hold that the appellant is without a judicial remedy for an action by her employing agency that majorly affected her rights and interests under FERS is an "absurd result[] . . . to be avoided." *Lisanti*, 573 F.3d at 1339 (quoting *Wassenaar v. Office of Personnel Management*, 21 F.3d 1090, 1092 (Fed. Cir. 1994)). We find instead that the Board's jurisdiction extends to this underlying issue and that the parties should have a full and fair opportunity to develop the record on it.

In her petition for review, the appellant stated that she was still seeking help from the SSA Employee Assistance Program Counselor but that he was on leave for medical reasons at the time. PFR File, Tab 1 at 2, 4. Bearing in mind that the appellant has the burden of proving her entitlement to benefits, on remand, the parties will have an opportunity to call this individual or another appropriate SSA official as a witness at a supplemental hearing to explain why SSA has inconsistent representations about the appellant's last day of duty status and pay, and to obtain other relevant evidence from SSA according to the Board's procedures. In particular, it would be helpful to have the appellant's time and attendance records for the 2015 to 2017 time period, documentary evidence of any annual leave request that the appellant may have made for October 5, 2016,[2] and any other documentary evidence of the appellant's leave usage, leave status, and leave balances (if any) from May 2015 onward. This pay action has numerous indicia of being some kind of administrative error, including its seemingly isolated nature, the apparent absence of a leave request, its deposit into an unused bank account, and the lack of any clear explanation for it. However, with the current state of the record, we cannot decide the issue one way or the other.

Waiver

If, after receiving additional evidence and argument on remand as described above, the administrative judge still finds that OPM has proven the existence and the amount of the overpayment, then the administrative judge must revisit the issue of waiver.

An appellant bears the burden of establishing her entitlement to a waiver of recovery of an overpayment by substantial evidence. *Boone v. Office of*

---

[2] On petition for review, the appellant specifically denies making any such request. PFR File, Tab 1 at 1. If the appellant did not, in fact, request annual leave for October 5, 2016, the Board would like to know whether there are any circumstances in which SSA is authorized to place an employee in paid annual leave status against her wishes or if SSA concedes that this was administrative error.

*Personnel Management*, 119 M.S.P.R. 53, ¶ 5 (2012); 5 C.F.R. § 845.307(b). Generally, the recovery of a FERS overpayment should be waived if the recipient is without fault and recovery would be against equity and good conscience. 5 U.S.C. § 8470(b); *Boone*, 119 M.S.P.R. 53, ¶ 5; 5 C.F.R. § 845.301. As relevant here, recovery is against equity and good conscience when it would cause financial hardship.[3] *Boone*, 119 M.S.P.R. 53, ¶ 5; 5 C.F.R. § 845.303(a). OPM determined that the appellant was without fault in creating the overpayment, a position with which the administrative judge implicitly agreed. IAF, Tab 8 at 24; ID at 5. Because the parties do not dispute that finding here, we decline to disturb it. On review, the appellant disputes the administrative judge's determination that she failed to prove financial hardship entitling her to a waiver of the overpayment. ID at 5-6; PFR File, Tab 1 at 2.

Financial hardship may exist when the annuitant needs substantially all of her income and liquid assets to meet current ordinary and necessary living expenses and liabilities. *Malone v. Office of Personnel Management*, 113 M.S.P.R. 104, ¶ 4 (2010); 5 C.F.R. § 845.304. OPM's regulations specify that ordinary and necessary living expenses include rent, mortgage payments, utilities, maintenance, transportation, food, clothing, insurance (life, health, and accident), taxes, installment payments, medical expenses, support expenses for which the annuitant is legally responsible, and other miscellaneous expenses that the individual can establish are ordinary and necessary. *Stewart v. Office of Personnel Management*, 102 M.S.P.R. 272, ¶ 7 (2006); 5 C.F.R. § 845.305.

In determining whether living expenses are "ordinary and necessary," the Board applies a reasonable person test regardless of the annuitant's accustomed standard of living, taking into account the discrete circumstances particular to

---

[3] OPM policy further provides that individuals who know or suspect that they are receiving overpayments are expected to set aside the amount overpaid pending recoupment and that in the absence of exceptional circumstances—which do not include financial hardship—recovery in these cases is not against equity and good conscience. *Knox v. Office of Personnel Management*, 107 M.S.P.R. 353, ¶ 8 (2007). Here, there is no indication that the appellant knew or suspected that she was receiving overpayments.

individual situations. *Stewart*, 102 M.S.P.R. 272, ¶ 7. Although ordinary and necessary expenses should be reasonable under the circumstances, the Board gives the appellant the benefit of the doubt unless the expense clearly constitutes an extravagance or a luxury. *Malone*, 113 M.S.P.R. 104, ¶ 7.

For purposes of determining whether an annuitant is entitled to waiver of the overpayment on the ground of financial hardship, the annuitant's monthly expenses are calculated by adding the following figures: (1) the annuitant's ordinary and necessary monthly expenses; and (2) $50 for emergency expenses, as allowed by OPM. *Spinella v. Office of Personnel Management*, 109 M.S.P.R. 185, ¶ 11 (2008). The total monthly expense figure is then subtracted from total monthly income to ascertain the annuitant's income/expense margin. *Id*. Once an annuitant's income/expense margin is determined, the Board will consider the annuitant's total financial condition, and determine whether the annuitant needs substantially all her current income and liquid assets to meet current and ordinary living expenses and liabilities. *Id*.

The appellant did not provide OPM with a Financial Resources Questionnaire (FRQ), but she submitted one during the proceedings below, which the administrative judge considered. IAF, Tab 8 at 25, Tab 16. According to this FRQ, the appellant had $213.74 in liquid assets. IAF, Tab 16 at 3. She listed $2,515.43 as her average monthly income and $3,659.02 as her average monthly expenses.[4] *Id*. at 2. As the administrative judge noted, the appellant included both a monthly mortgage amount and $729.30 per month in taxes. IAF, Tab 16

_____

[4] In her FRQ, apparently completed in November 2019, the appellant noted that the $1,442.09 she listed in monthly mortgage payments was the amount her mortgage would be increased to beginning on December 1, 2019. IAF, Tab 16 at 2. Accordingly, the appellant's assertion on review that her mortgage payments have now increased to this amount has already been taken into account. PFR File, Tab 1 at 2. The credit report she provides on review in support of her mortgage payments is therefore not material to our decision. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (explaining that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).

at 2; ID at 6. The administrative judge found it likely that the appellant's taxes are included in her mortgage. ID at 6. Regarding the $254.15 that the appellant listed in monthly payments on existing installment contracts and other debts, she only explained where $165 of that amount went. IAF, Tab 16 at 2-3. Moreover, the administrative judge noted that the debt she paid $165 per month on was scheduled to be paid off in 2 years. ID at 6. The appellant does not challenge these findings on review, and we see no reason to disturb them. Accordingly, we subtract the $729.30 and $254.15 figures listed in the appellant's expense column, add $50 in emergency expenses, and calculate her average monthly expenses to be $2,725.57. This is $210.14 more than the appellant's average monthly income.

When an appellant is without fault regarding an overpayment and needs all of her income and liquid assets to meet current ordinary and necessary living expenses and liabilities, the Board has found financial hardship warranting a waiver. *See, e.g.*, *Stewart*, 102 M.S.P.R. 272, ¶ 10; *Hudson v. Office of Personnel Management*, 87 M.S.P.R. 385, ¶ 12 (2000); *Tatum v. Office of Personnel Management*, 82 M.S.P.R. 96, ¶ 21 (1999).[5] Here, however, we do not find that the record establishes by substantial evidence that the appellant currently has a negative income/expense margin. For one, the appellant's FRQ was apparently completed in November 2019, and it seems probable that by now her financial condition has changed. *See Spinella*, 109 M.S.P.R. 185, ¶ 12 (finding that a negative income/expense margin of $480 suggested that the appellant might be entitled to a waiver based on financial hardship and remanding to the administrative judge because the appellant's FRQ was nearly 2 years old and he claimed on review that his financial condition had deteriorated).

---

[5] The administrative judge found that the appellant failed to establish financial hardship entitling her to a waiver but did establish financial hardship entitling her to an adjustment. ID at 6-7. Because, as represented below, the appellant's expenses and liquid assets exceeded her income, we find it unnecessary to determine whether it is appropriate to make a distinction between financial hardship for waiver and financial hardship for an adjustment.

Additionally, the appellant failed to explain or substantiate a number of items listed in her FRQ. For instance, she listed $1,828 in monthly disability benefits, but because she did not specify the source, it is unclear whether she included in that amount her FERS basic annuity payments. IAF, Tab 16 at 2. The appellant failed to state whether she paid any taxes other than her mortgage taxes; questioned her own listed clothing and transportation expenses; and indicated that she has no medical or dental expenses, which appears unreasonable absent an explanation. *Id.* As indicated above, she accounted for only $165 of her claimed $254.15 monthly installment payments on other debts. *Id.* at 2-3. Accordingly, we do not find that the appellant's claimed income and expenses are complete and reasonable on their face. *See Spinella*, 109 M.S.P.R. 185, ¶ 11 (finding that in the absence of a specific challenge by OPM, an appellant seeking waiver of an annuity overpayment should not be required to substantiate his expenses and income unless the information submitted appears incomplete or unreasonable on its face). For the reasons above and because the administrative judge did not inform the appellant of what evidence she needed to provide in support of her financial hardship claim, we find it appropriate to remand this appeal for further adjudication of this issue. *See Malone*, 113 M.S.P.R. 104, ¶ 9 (remanding to allow the appellant an opportunity to present evidence on whether a new expense was reasonable and to submit an updated FRQ with supporting documentation); *Starr v. Office of Personnel Management*, 81 M.S.P.R. 633, ¶ 7 (1999) (remanding to afford the appellant an opportunity to present evidence to establish his monthly income and expenses, and cautioning that—if he failed to cooperate by providing requested information—his repayment schedule would not be adjusted); *Harless v. Office of Personnel Management*, 71 M.S.P.R. 110, 113 (1996) (finding that an administrative judge should give an appellant a chance to submit current financial information if the evidence initially submitted is incomplete, confusing, or out of date).

**ORDER**

For the reasons discussed above, we remand this case to the Northeastern Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.